IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–03261–KMT

KIMBERLY SPAZIANI,

      Plaintiff,

v.

JEPPESEN SANDERSON, INC.,

      Defendant.

---

## ORDER

---

This matter is before the court on "Jeppesen Sanderson, Inc.'s Motion for Summary Judgment" (Doc. No. 41 [Mot.], filed November 3, 2015). Plaintiff filed her response on December 4, 2015 (Doc. No. 45 [Resp.]), and Defendant filed its reply on December 21, 2015 (Doc. No. 47 [Reply]).

### STATEMENT OF THE CASE

This is an employment discrimination action in which Plaintiff alleges she was discriminated against because she is a lesbian and that she was retaliated against for taking part in an EEOC investigation. (Doc. No. 5 [Compl.], filed December 2, 2014.) Plaintiff asserts claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964. (*Id.*, ¶¶

18–21.)  Plaintiff also asserts a claim for discrimination under the Colorado Anti-Discrimination Act.[1]  (*Id.*, ¶¶ 22–24.)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Following are the undisputed facts as relevant to this Order as taken from Plaintiff's complaint and the briefing on this motion.

1.     Defendant Jeppesen Sanderson, Inc. ("Jeppesen") is a subsidiary of the Boeing Company ("Boeing") and provides innovative products that integrate navigation, operations, and logistic information for aviation and marine applications.  (Doc. No. 41-2, Decl. of Mitchell Mr. Villanueva [Mr. Villanueva Decl.], ¶ 6.)

2.     Plaintiff, who self identifies as a lesbian, began work with Jeppesen in August 2009 as an Organizational Development Consultant.  On May 10, 2010, she was promoted to Senior Manager, Global Organizational Development ("Senior Manager"), her last position at Jeppesen.  Plaintiff worked at Jeppesen's Englewood, Colorado, office in the Organizational Development group.  (Doc. No. 41-3 [Pl. Dep.] at 30:5–7, 30:12–14, 37:22–38:3, 24:5–7, 100:1–3; Mr. Villanueva Decl., ¶ 7.)

3.     Jeppesen has an equal employment opportunity policy prohibiting sex and sexual orientation discrimination and retaliation.  Plaintiff received a copy of the policy.  (Doc. No. 41-9 [Ex. 4 to Pl. Dep.] at 2; Pl. Dep. at 28:16–29:12.)

4.     Anne Bozeman, the Vice President of Human Resources, led Human Resources at Jeppesen when Plaintiff became Senior Manager, and Plaintiff reported to her.  Ms. Bozeman was a member of Jeppesen's Senior Leadership Team, which included various officers, including

---

[1] Plaintiff's claims for intentional interference with contract and wrongful discharge in violation of public policy have been dismissed.  (*See* Doc. No. 40.)

its CEO, COO, vice presidents, and chief legal counsel.  (Pl. Dep. at 32:22–38:18, 54:7–11, 83:24–84:6.)

5.      Plaintiff got along well with Ms. Bozeman professionally and personally.  Ms. Bozeman named Plaintiff and Scott Larner (another Senior Manager in Human Resources) as potential successors to Ms. Bozeman's position.  (Pl. Dep. at 41:18–25, 53:9–54:6, 56:5–10.)

6.      Les Dupree, Kristin Slocum, and Pamela Williams – who conduct corporate compliance investigations, not discrimination investigations – were investigating allegations about Ms. Bozeman's authorization of retention payments to employees without following Boeing policy ("Retention Payment Investigation").  When Mr. Dupree contacted Plaintiff about the investigation in September 2011, she did not offer significant information.  (Pl. Dep. at 61:20–62:19, 63:18–23; Doc. No. 41-11, Decl. of BV Mr. McGrue [Mr. McGrue Decl.], ¶¶ 7–8.)

7.      Plaintiff had a "change of conscience" as to her willingness to provide information related to the Retention Payment Investigation.  On December 1, 2011, she emailed Mr. Dupree, stating she had information that could be helpful to his investigation, and she corresponded with Ms. Slocum and Ms. Williams at that time. (Mr. McGrue Decl., ¶10; Pl. Dep. 53:23–54:9, 64:6–65:8, 65:4–24, 68:24–69:9; Doc. No. 41-12.)

8.      During the Retention Payment Investigation, investigators asked Plaintiff to speak with a Boeing Equal Employment Opportunity investigator because Nancy Henderson, a former Jeppesen employee, had also claimed age and sex discrimination against Ms. Bozeman (the "EEO Investigation").  (Pl. Dep. 71:17–72:6.)

9.      Jeppesen terminated Ms. Bozeman's employment on February 28, 2012, based on the Retention Payment Investigation.  Plaintiff has no knowledge of the reason for Ms. Bozeman's termination.  (Mr. McGrue Decl., ¶ 11; Pl. Dep. at 91:1–7, 91:24–92:7, 93:18–20.)

10.     After Ms. Bozeman's discharge, Mr. Larner was appointed as the interim head of Human Resources in March 2012.  Mitch Villanueva, who did not previously work for Jeppesen, and had no involvement in either the EEO or Retention Payment Investigations, succeeded Mr. Larner and became Vice President of Human Resources at Jeppesen in August 2012.  Mr. Mr. Villanueva had never worked with Ms. Bozeman on any matters related to Jeppesen and had not previously worked with Plaintiff.  (Pl. Dep. at 96:11–14; Doc. No. 41-8 [Mr. Villanueva Dep.] at 8:16–23; Mr. Villanueva Decl., ¶ 8.)

11.     Before Jeppesen, Mr. Villanueva worked for Boeing.  Previously, he cared for his children while his wife worked.  (Mr. Villanueva Dep. at 5:8–8:20.)

12.     BV McGrue, the Human Resources Director for Boeing's Commercial Aviation Services Organization, had supervised Ms. Bozeman and later supervised Mr. Villanueva, and knew Plaintiff was sensitive about her involvement in the EEO investigation.  (Doc. No. 41-14, Mr. McGrue Dep., at 6:17–7:5, 20:17–18.)  Mr. McGrue therefore gave Mr. Villanueva general information of Plaintiff's involvement so he would be sensitive to her concerns but did not give Mr. Villanueva insight on anything Plaintiff may have said or the extent of her participation in the investigation.  (*Id.* at 20:17–21:25, 22:16–18; Mr. Villanueva Dep. 29:4–17.)  The information Mr. McGrue provided was relayed over a period of 15 to 20 seconds.  (*Id.* at 21:22–25.)

13.     Until October 3, 2012, Plaintiff had a good relationship with Mr. Villanueva and met with him regularly.  On October 3, 2012, she met with Mr. Villanueva and he allegedly referred to her as "Mama."  Plaintiff claims she recalled Mr. Villanueva had referred to his wife as "Mama" in a separate conversation.  Plaintiff never heard him use the term "Mama" after the October 3 meeting.  After disclosing her sexual orientation to Mr. Villanueva in that meeting, Plaintiff alleges she saw the color leave Mr. Villanueva's face, he was silent, and she "got a really bad vibe." (Pl. Dep. at 110:16–111:23, 112:8–25, 115:12–20, 116:7–9.)

14.     In February 2013, Mr. Villanueva dropped by Plaintiff's office and asked her to attend a diversity conference in March, and she agreed to attend.  Plaintiff alleges Mr. Villanueva asked her what her wife thought about her attending the conference in front of other attendees; apart from this incident, Mr. Villanueva did not mention her sexual orientation.  Plaintiff never made any complaint of discrimination, harassment, or retaliation to Human Resources or Jeppesen about Mr. Villanueva.  (Pl. Dep. at 41:4–12, 158:25–159:11, 159:22–25, 161:15–162:8, 164:8–10.)

15.     Mr. Villanueva never made any derogatory comments about Plaintiff's sexual orientation, her appearance, or her behavior.  (Pl. Dep. at 113:17–21, 115:4–11.)

16.     In 2013, Boeing implemented a Reduction in Force ("RIF") impacting 1,500 to 1,600 employees.  Jeppesen had to reduce its headcount in human resources by five, as determined by Commercial Aviation Services.  (Doc. No. 41-14 [Mr. McGrue Dep.] at 28:3–21, 30:22–31:5; Mr. Villanueva Dep. at 44:6–25.)

17.     Moving forward, the Organizational Development services Plaintiff was providing were discretionary, not as critical, and were not human resources generalist functions.

At this time, Jeppesen would be able to start leveraging resources that Boeing had, such as Boeing's organizational effectiveness group, and within Jeppesen, discretionary training would be emphasized less going forward. Mandatory functions, like human resources generalist and compliance roles would be preserved.  (Mr. Villanueva Dep.at 52:21–53:3, 56:8–13, 59:10–60:4, 63:1–19; Pl. Dep. 204:1–3.)

18.     During the RIF, Mr. Villanueva rated his direct reports, including Plaintiff, Mr. Larner, and Stephanie Kimberling, based on criteria Jeppesen provided.  (Mr. Villanueva Dep. at 47:7–13.)  Mr. Villanueva rated Plaintiff lowest in two categories, including a "1" in Teamwork/Collaboration based on feedback from HR colleagues that she did not help with work outside of Organizational Development and a "1" in Individual Impact based on Jeppesen's needs going forward and Plaintiff's skills.  (*Id.* at 56:20–57:20; 60:7–11.)  Plaintiff did not have the necessary experience regarding employment practices, salary analysis, compensation, benefits, HR investigation, or working with work councils.  (*Id.* at 59:10–60:11.)  Plaintiff never held any kind of Human Resources generalist or other traditional HR role.  (Pl. Dep. at 16:23–17:8; Doc. No. 41-16, Spaziani CV.)  Based on Mr. Villanueva's application of the selection criteria for the RIF, Plaintiff ranked lowest among Mr. Villanueva's direct reports.  (Doc. No. 41-15, Rate and Ranking by Mitch Mr. Villanueva.*)*  On August 26, 2013, Plaintiff was informed of her layoff, effective September 25, 2013.  (Pl. depo at 213:19–24.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support

the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

# ANALYSIS

## *1.* *Discrimination*

At the outset the court notes that Defendant construes Plaintiff's discrimination claim as being asserted (1) based on her sexual orientation, (2) based on her not fitting a sexual stereotype, and (3) based on her being a woman. (*See* Mot. at 8.) In her response, Plaintiff clarifies that she is only alleging a discrimination claim based on her sexual orientation. (*See* Resp. at 11.) Thus, the court need not address Defendant's arguments regarding discrimination based on sexual stereotype or gender.

Where, as here, a plaintiff seeks to use circumstantial evidence to show her employer's discriminatory intent, the court employs the three-step burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima facie* case of discrimination. A *prima facie* case generally requires a plaintiff to show, by a preponderance of the evidence, that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). While the elements of a *prima facie* case "are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor." *Adamson*, 514 F.3d at 1146.

Here, the parties dispute whether Plaintiff can establish a *prima facie* case of discrimination.  (*See* Mot. at 9–11; Resp. at 11–15; Reply at 6–7.)  However, the court need not decide the issue to resolve Defendant's motion, and so the court will assume, for this opinion only, that Plaintiff can establish a *prima facie* case.  *Cf. Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (noting that the burden of establishing a *prima facie* case is "not onerous" (citing *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir.2001)).  Defendant states that it terminated Plaintiff because of the elimination of Organizational Development and Plaintiff's inclusion in the RIF where she was the lowest ranking employee in her job group. (Mot., ¶ 23.)  Plaintiff does not dispute that this is a "legitimate, nondiscriminatory reason" for terminating her employment.  (*See* Resp. at 15.)  Thus, the analysis proceeds to the final step of the *McDonnell Douglas* analysis, where it is Plaintiff's burden to show that Defendant's reason is pretextual.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

"A plaintiff can show pretext by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . .' " *Plotke*, 405 F.3d at 1102 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). In the typical RIF case, a plaintiff demonstrates pretext by presenting evidence that her termination did not accord with the company's RIF criteria, that the RIF criteria were deliberately falsified or manipulated to secure the plaintiff's dismissal, or that the RIF generally was pretextual.  *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006). A reasonable juror can draw an inference that an employer has manipulated its evaluation of an employee under its RIF criteria if the record indicates evidence of discriminatory animus on the

part of a supervisor with power to assess an employee's job performance.  *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998).  In order to defeat a motion for summary judgment, a plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—*i.e.*, unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  When assessing whether a plaintiff has demonstrated pretext such that a jury could conclude that discrimination was the true reason for the adverse employment action, the court considers the evidence as a whole.  *See Danville v. Reg'l Lab Corp.*, 1250 (10th Cir. 2002).

Plaintiff argues only that Mr. Villanueva manipulated the RIF criteria by "inexplicably dropping her from an upper tier of performance to below the lowest tier."  (Resp. at 16.) Plaintiff argues that Liz Young, Plaintiff's coworker, thought there would have been a place for Plaintiff, and, thus, the elimination of Organizational Development is irrelevant.  (*Id.* at 9–10.) In the portion of her deposition cited by Plaintiff to support this argument, Ms. Young stated that, "if we did not have the head count constraints, there would be a place [for Plaintiff in the organization]."  (Doc. No. 45-6, Young Dep., at 11:4–11.)  Plaintiff's argument based on this testimony is unavailing because Defendant *did* have head count constraints.  The undisputed evidence shows that the HR Department was required to lay off five "heads."  The elimination of Organizational Development impacted RIF scores because Mr. Villanueva considered whether the loss of an individual would impact business, and Mr. Villanueva determined Plaintiff did not have the necessary experience regarding employment practices, salary analysis, compensation, benefits, HR investigation, or working with work councils to be a HR generalist.  (Mr. Villanueva Dep. at 59:10–60:11; *see* Doc. No. 46-2 at 2.)

Plaintiff also argues that three other individuals, Ms. Young, Susan Dunn, and Scott Larner, would have given her higher RIF scores.  (Resp. at 7–9.)  However, the court must "examine the facts as they appear[ed] *to the person making the decision*."  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) (emphasis in original) (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)).  Moreover, in her deposition, Ms. Young said, "So not knowing Mitch's expectations . . . I wouldn't have the ability to rate in [the area of Teamwork Collaboration]."  (Young Dep. at 13:19–24.)  Susan Dunn, who reported to Plaintiff, said, "I'm not in a position to talk about her performance" (Doc. No. 45-7, Dunn Dep., at 37:9–10) and noted that, though Plaintiff did not relate to her as a "1" she "[could] not say how others perceived [Plaintiff]" (*id.* at 33:25–34:1–7).[2]  These opinions from individuals who did not manage Plaintiff and were not involved in the RIF decision are irrelevant.

Plaintiff contends that Mr. Villanueva planned all along to terminate her as evidenced by his low RIF scoring of Plaintiff coupled with (1) his avoidance of one-on-one meetings with Plaintiff from October, 2012, onward; (2) his failure to tell Plaintiff of the succession room; (3) his inquiring of Plaintiff in January 2013 what she would do if she were no longer working at Jeppesen; and (4) his instructions to Mr. Larner and Ms. Dunn that they were to keep information from Plaintiff.  (Resp. at 16.)

First, Plaintiff argues that after the October 3 meeting, her one-on-one meetings with Mr. Villanueva ended and that he avoided meeting with her even though she constantly tried to set up meetings.  (Resp. at 5.)  Plaintiff contends that "[h]e continued to meet with other employees at his request."  (*Id.*)  In support of this contention, Plaintiff cites to the deposition of Ms. Dunn, in

---

[2] Plaintiff did not attach the pages of Mr. Larner's deposition to which she cited in support of this argument.  Therefore, the court will not consider those references.

which Ms. Dunn states that for approximately a year before the RIF she did not see Mr.

Villanueva often and she had one-on-one meetings with Mr. Villanueva only a few times at *his*

request.  (Dunn dep. at 46:2–14.)  This evidence that one employee met with Mr. Villanueva a

few times in a year does not support Plaintiff's allegations.  Moreover, the undisputed evidence

shows that Mr. Larner and Mr. Villanueva stopped meeting due to time constraints with Mr.

Villanueva's schedule.  (Doc. No. 27-2, Larner Dep., at 40:21–41:11.)  Finally, Plaintiff

concedes that she met with Mr. Villanueva in January and February 2013.  (*See* Resp. at 6–7.)

Second, Plaintiff contends that before the October 3 meeting, she and Mr. Villanueva had

several conversations about creating a locked succession room.  (Resp. at 5.)  Plaintiff claims she

"surreptitiously discovered in the summer of 2013 that such a room had been created, but she

was never told of this room, nor given access to it, even though succession planning was a major

part of her duties."  (*Id.* at 6.)  While Mr. Villanueva testified that the room was used for more

than succession planning and was used for succession planning less than ten percent of the time,

it appears undisputed that Plaintiff was not informed of the creation of the room.  Plaintiff's lack

of awareness of the succession room is not a material fact that "is essential to the proper

disposition of the claim."  *Adler*, 144 F.3d at 670.  (Doc. No. 47-3, Mr. Villanueva Dep., at

35:11–16.)

Third, to the extent Plaintiff alleges Mr. Villanueva asked Plaintiff seven months before

she was terminated what she would do if she were not working at Jeppesen, this allegation is

insufficient to create a material issue of fact to demonstrate pretext.  *Cf. Watson v. City of*

*Topeka*, 241 F. Supp. 2d 1223, 1231 (D. Kan. 2002) (citation omitted) (In context of hostile

workplace claim, "offhand comments, and isolated incidents (unless extremely serious ) will not amount to discriminatory changes in the 'terms and conditions of employment.' ")

Finally, though Plaintiff alleges Mr. Villanueva told Mr. Larner to keep information from Plaintiff, Mr. Larner testified that Mr. Villanueva also asked him not to share certain information with anybody else.  (*See* Doc. No. 45-8, Larner Dep., 44:21–46:5.)

Unfortunately for Plaintiff, her mere "[c]onclusory allegations, conjecture, or mere allegations of impartial treatment" that  are not supported by facts in the record are insufficient to show pretext.  *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1207 (10th Cir. 2004).  Plaintiff has failed to meet her burden of showing that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—*i.e.*, unworthy of belief."  *Randle*, 69 F.3d at 451.

Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claim. Moreover, "Colorado and federal law apply the same standards to discrimination claims." *Johnson*, 594 F.3d at 1219 n.11.  As such, Plaintiff's Title VII and CADA claims "rise or fall together."  *Id.* (citation and internal marks omitted).  Thus, Defendant also is entitled to summary judgment on Plaintiff's CADA claim.

## 2.   *Retaliation*

To establish a *prima facie* case of retaliation, a plaintiff must show: "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452

F.3d 1193, 1202 (10th Cir. 2006)).  "To establish that a causal connection exists," a plaintiff

"may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as

protected conduct closely followed by adverse action.' "  *Proctor v. United Parcel Serv.*, 502

F.3d at 1208 (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)).

Generally speaking, if this temporal proximity between the protected activity and the adverse

action are not "very close in time," the plaintiff "must offer additional evidence to establish

causation."  *Proctor*, 502 F.3d at 1209 (internal quotation marks omitted)(quoting *Haynes*, 456

F.3d at 1228).

Defendant concedes that Plaintiff engaged in protected conduct through her participation

in the EEO Investigation[3] and that she suffered an adverse employment decision when her

employment was terminated.  (Mot. at 18.)  Defendant argues that Plaintiff cannot show any

evidence of a causal connection between her participation in the EEO Investigation and her

termination.

In her Complaint, Plaintiff surmises that because of her role in investigations concerning

Ms. Bozeman (prompted by Boeing), the Senior Leadership Team became upset and used Mr.

Villanueva to retaliate against her.  (Compl., ¶ 9.)  Defendant presents the testimony of BV

McGrue, the Human Resources Director for Boeing's Commercial Aviation Services

Organization, who had supervised Ms. Bozeman and later supervised Mr. Villanueva and stated

he knew Plaintiff was sensitive about her involvement in the EEO Investigation.  (Doc. No. 41-

---

[3] Title VII bars retaliation by an employer against an employee who participated in any manner
in an investigation concerning an employment practice made unlawful by Title VII.  *See Univ. of
Texas SW Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013).  Defendant argues and the court
agrees that Plaintiff's retaliation claim fails to the extent it is based on her participation in the
Retention Payment Investigation, which was an internal investigation not related to Title VII.

14, Mr. McGrue Dep., at 6:17–7:5, 20:17–18.)  Mr. McGrue therefore gave Mr. Villanueva general information of Plaintiff's involvement so he would be sensitive to her concerns but did not give Mr. Villanueva insight on anything Plaintiff may have said or the extent of her participation in the investigations.  (*Id.* at 20:17–21:25, 22:16–18; Mr. Villanueva Dep. 29:4–17.)  The information Mr. McGrue provided was relayed over 15 to 20 seconds.  (*Id.* at 21:22–25.)

Plaintiff, on the other hand, presents no evidence to show Mr. Villanueva was aware of Plaintiff's actual involvement in the EEO Investigation or that the Senior Leadership Team influenced him.[4]  Thus, Plaintiff cannot prove causation.  *See*, *e.g.*, *E.E.O.C. v. McPherson Companies, Inc.*, 914 F. Supp. 2d 1234, 1248 (N.D. Ala. 2012) ("To establish the causal links, EEOC must show that the decision-makers were aware of the protected conduct at the time each adverse action was taken.").

Moreover, because 21 months passed between Plaintiff's participation in the EEO Investigation and Mr. Villanueva's decision to terminate her, Plaintiff has failed to establish that her protected conduct was closely followed by the adverse action.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (citation omitted) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation.  By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.")  Other than the arguments that this court rejected *supra* regarding Villenaueva's allegedly asking Plaintiff what she would do if she no longer worked at Jeppesen,

---

[4] Plaintiff argues, relying on an email, that Mr. McGrue told Mr. Villanueva that her involvement in an investigation was key to terminating Ms. Bozeman.  The email is not attached to and authenticated by an affidavit that conforms to Fed. R. Civ. P. 56(e), and therefore, Plaintiff cannot use it in support of her response to the motion for summary judgment.  *See Bell v. City of Topeka, Kan.*, 496 F.Supp.2d 1182, 1184–85 (D. Kan. 2007) (discussing when unauthenticated documents may be used in support of a summary judgment motion).

the creation of a succession room, and allegations that Mr. Villanueva told other employees not to share information with Plaintiff, Plaintiff has failed to "offer additional evidence to establish causation." *Proctor*, 502 F.3d at 1209.

Thus, Defendant also is entitled to summary judgment on Plaintiff's retaliation claim.

**WHEREFORE**, it is

**ORDERED** that "Jeppesen Sanderson, Inc.'s Motion for Summary Judgment" (Doc. No. 41) is **GRANTED**.  It is further

**ORDERED** that judgment shall enter in favor of Defendants and against Plaintiff on all claims for relief and causes of action asserted in this case in accordance with this Order and the court's previous Order granting Defendants' motion to dismiss (Doc. No. 40). It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. It is further

**ORDERED** that this case is **CLOSED**, and the Trial Preparation Conference set for April 7, 2016, and the Trial set for May 9, 2016, are **VACATED**.

Dated this 6th day of April, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge